Chief Justice Robertson,
delivered the opinion of the court.
In 1825-26, Samuel Alexander and Nathan O. Haydon, who were engaged as partners in the business of freighting Tobacco, obtained from Dabney Finley various sums in notes of the bank of the commonwealth, for which the following promissory notes were given for specie.
1. A note for $100, dated October 22d,- 1825 j *372 payable on or before the 22d of May, 1827, with eSa^ interest from the date, and signed by Alexander and Haydon, as principals, and by John Breeding and David Breeding as sureties.
II. A note for $275 GO cents, dated August 7th, 1826, payable on or before the 14th day of July, 1827, and signed by Alexander and Haydon as principals, and by David Breeding as surety.
III. A note for§>320, dated July 14th, 1825, payable to Dabney Finley, as agent for Peggy Gleaves, two years after date, with legal interest from the date, and signed by Samuel Alexander as principal, and by Thomas Arbuckle and David Breeding as sureties.
IV. A note for $650 50 cents, dated September 15t.h, 1825, payable on or before the last of April, 18?7, and signed by N. O. Haydon, Elijah Smith, Joel H. Haydon, Samuel Alexander and Anthony Haydon.
V. A note for $41, dated October 22d, 1125, payable on or before the 22d of May, 1827, and signed by Haydon and Alexander as principals, and by John Breeding and Dcivid Breeding as sureties.
VI. A note for $41 12 1-2 cents, dated Oct. 22d, 1825, payable on or before the 22d of May, 1827, and signed by Alexander and Haydon as principals, and by John Breeding and David Breeding as sureties.
Judgments were obtained on all the foregoing notes, except note No. 4. The judgments on notes No. 12 3 were replevied by N. 0. Playdon, Samuel Alexander, John and David Breeding, and Tho* as Arbuckle.
The judgments on notes No, 5 and 6, were re-plevie.d by John and David Breeding, and Levi Cornelius, and the whole amount due on these two re-plevin bonds was afterwards paid by John and David Breeding.
To indemnify the sureties in all the foregoing notes, and also to indemnify Joel H. Haydon, Anthony Haydon, John Estis, John Breeding and David Breeding, as sureties for N. O. Haydon and Samuel *373 Alexander, on a note for $1000 to James Wier, due in the Autumn of 1827, Nathan 0. Haydon and Samuel Alexander, on the 16th of October, mortgaged to their said sureties one slave and several tracts of land; and on the same day executed a seperate mortgage to Joel H. Haydon, on a slave and some horses, to indemnify him more completely as one of their sureties to Wier.
On the 17th of July, 1827, Samuel Alexander mortgaged to John Breeding, David Breeding, Thomas Arbuclde, Henry Christman, Levi Cornelius and James Tindal, all his residuary interest in the property contained in the two prior mortgages, and also his interest in some other property claimed, exclusively by himself, and which had not been previously mortgagd.
On the 2d of August, 1827, the mortgagors and mortgagees in the foregoing mortgages, by a sealed power of Attorney, authorized Absalom M. Sharp, to sell all the mortgaged property, and to distribute the proceeds of the sales for the relief of the respective mortgagees according to their rights and in proportion to the extent of their several claims and liabilities.
In virtue of his authority, Sharp sold three of the tracts of land and the slave, mentioned in the first mortgage for $2028 30 cents; and sold the property included in the seperate mortgage to Joel H. Hay-don for $649 83 1-3 cents, and sold a portion of the property exclusively mortgaged by Alexander, in the 3d mortgage for $521 65 1-2 cents. He applied the $521 65 1-2 cents towards the extinguishment of a debt, to secure which, the last mortgage was given.
With the avails of the property sold under the two first mortgages, he paid Wier $866, paid off the note to Finley for $655 50 cents, and made other payments to Finley and to others, whose debts were not described or included in any of the mortgages.
Arbuckle, and David, and John Breeding, brought this suit in chancery against Finley, Sharp and others; charging in their bill, that the notes on the bank of the commonwealth, in consideration of which the promissory notes which have been described *374 were given, were loaned, and that the loans were usurious to the extent of the difference between the of specie and of commonwealth paper, at the respective dates of the notes; praying for relief to the extent of the usury; insisting that the last mortgagees have a right to the benefit of a sale of all the estate included in all the mortgages after paying, according to the tenor and intent of the authority vested in Sharp, the amount actually and legally due of the debts, for which the two first mortgages were given, and praying for a decree for enforcing sales of all the property which had been mortgaged, and for a decree for such other relief as might be proper. On this bill an injunction was granted.
Finley, Sharp, Alexander, and Joel H. Haydon, answered the bill. Finley denies the alleged loans, and insists ,the commonwealth paper was sold to Haydon and Alexander. Sharp exhibits an account of sales, and of the application which he had made of the proceeds, insisting that he had not transcended, or in any respect, disregarded his authority, and that he had acted, throughout his agency, in pursuance of the instructions of all the parties interested. Alexander admits the allegations of the bill; makes his answer a cross bill, and prays for a decree in favor of the appellants, or of himself for their benefit. J. H. Haydon charges usury in the notes in which he was a surety, and makes his answer also a cross hill. Demurrers to the cross bills were sustained, and the circuit court dissolved the injunction with damages, and dismissed the bill absolutely with costs.
This decree is erroneous.
1st. The proper parties were not before the court. Wier and Nathan 0. Haydon were necessary parties. If the allegations of the bill be true, the appellants are entitled to a perpetuation of their injunction, so far as the alleged usury may be applied in equity to the replevin bonds which had not been satisfied. They might also be entitled to the benefit which their principals, Haydon and Alexander, would have a right to claim on account of any usury which may have been paid. But before there can be any such substitution Alexander and N. O. Haydon must both be parties to it; and Ware, so far as he *375 may be liable, cannot be affected unless he be a party. Neither Wier nor N. 0. Haydon answered*the bill; and it does not appear that either of them was a party by service . of process, or otherwise. The circuit court erred therefore, in dismissing the bill absolutely, and also in dissolving the injunction,
2d. The appellants, as subsequent mortgagees, have a right to a decree enforcing a sale of so much of the property included in their mortgage, as was not embraced in either of the prior mortgages; (if there be any such property;) and if the proper parties weré before the court, the appellants might be entitled to a decree, for enforcing a sale of all the property included in the first mortgage, and which remains unsold; and also to a decree adjusting the application of the proceeds of sales, according to the rule fixed by all the parties concerned, in their power of attorney to Sharp. A note to Peggy Gleaves for $518 was not included in any of the mortgages, and therefore, Sharp had no right to pay it, as he seems to have done, unless, as he alleges, the parties concerned, all consented to such an appropriation. Nor was the note to Stoneman and Carraban included in any of the mortgages, and consequently, Sharp had no right to pay the $120, which he seems to have paid on that note, unless all the parlies concerned, consented to suóh a payment. The appellants cannot object to it, because they acquiesced in it, and have claimed credit for it; but other persons interested in the mortgages, may object to it, if they never assented to it.
The proceeds of the sale of the property mortgaged to Joel H. Haydon, should have been applied to the payment of whatever was legally due to Wier; and the amount for which the property included in the first mortgage sold, and that for which so much of the property so mortgaged, and which has not been sold, may yet sell, should be applied distributively to the payment of all the debts included in the first mortgage, in proportion to their amount; for example, if the whole amount of the sales shall be sufficient to pay a certain per centum oii the aggregate of the debts, fifty per cent, for instance; then fifty per cent, on each debt should be paid, unless the *376 parties concerned have consented, or shall consent to a different mode, or ratio of appropriation.
Crittenden and Morehead, for appellants; Mills and Brown, for appellees.
As to the cross bills, the merits of the case cannot be affected by them; and therefore, it is not material whether demurrers to them were rightly sustained or not.
The principles thus settled will govern the circuit court in its final decree to be rendered when the case shall be in such a condition as to authorize a decree on the merits. What the decree should be, when the case shall be fully prepared, will depend on the new aspect, which it may then exhibit.
As the decree which has been made is, as the case now stands, erroneous, it must be reversed.
Wherefore, it is decreed and ordered, that the decree of the circuit court be reversed, and that the cause be remanded for proper parties to be made, and further proceedings thereupon to be had; and with instructions to dismiss the bill without prejudice, except so far as it seeks a sale of the property, exclusively contained in the last mortgage, unless, within a reasonable time, the proper parties shall be made; and to render a decree (in the event of such dismission) for selling the property included in the last mortgage, and which is not embraced by the first, provided it shall not already have been all sold.